Citation Nr: 1829632 
Decision Date: 06/27/18 Archive Date: 07/02/18

DOCKET NO. 13-09 547A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Baltimore, Maryland


THE ISSUES

1. Entitlement to service connection for a bilateral knee disability.

2. Entitlement to service connection for abdominal spasms.

3. Entitlement to service connection for muscle pains.

4. Entitlement to service connection for stress disorder.

5. Entitlement to service connection for hypertension (claimed as high blood pressure).

6. Entitlement to service connection for gastroesophageal reflux disease (GERD) (claimed as acid reflux).

7. Entitlement to service connection for memory problems.

8. Entitlement to service connection for hay fever, claimed as chronic cough.

9. Entitlement to service connection for dizziness.

10. Entitlement to service connection for degenerative joint disease (DJD) of the lumbosacral spine (claimed as back pain).

11. Entitlement to service connection for plantar fasciitis.

12. Entitlement to service connection for Gulf War Syndrome.


ATTORNEY FOR THE BOARD

C. Ryan, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1986 to February 1987 and from November 1990 to July 1991, to include service in Southwest Asia.

This appeal arose to the Board of Veterans' Appeals (Board) from an October 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Baltimore, Maryland.

The Board previously remanded this matter for further evidentiary development in April 2015.

In January 2017, the Veteran's previous attorney submitted correspondence requesting to withdraw as the Veteran's representative. In April 2018, the Board mailed the Veteran notifying him of his right to different representation. The letter stated that if the Veteran did not respond within 30 days, the Board would assume the Veteran wished to represent himself. To date, no response has been received, and the Board will proceed accordingly.


FINDINGS OF FACT

1. The Veteran's bilateral knee disability is not associated with service.

2. The Veteran does not have an abdominal spasms disorder.

3. The Veteran does not have a muscle pain disability.

4. The Veteran does not have a stress disorder.

5. The Veteran's hypertension is not associated with service.

6. The Veteran's GERD is not associated with service.

7. The Veteran does not have obstructive sleep apnea.

8. The Veteran does not have a memory problem disorder.

9. The Veteran's hay fever is associated with service.

10. The Veteran does not have a dizziness disorder.

11. The Veteran's DJD of the lumbosacral spine is not associated with service.

12. The Veteran's plantar fasciitis is not associated with service.

13. The Veteran does not have Gulf War syndrome.






CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for a bilateral knee disability have not been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303 (2017).

2. The criteria for entitlement to service connection for abdominal spasms, to include as due to an undiagnosed or medically unexplained chronic multisymptom illness, have not been met. 38 U.S.C. §§ 1110, 1117, 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303, 3.317 (2017).

3. The criteria for entitlement to service connection for muscle pains, to include as due to an undiagnosed or medically unexplained chronic multisymptom illness, have not been met. 38 U.S.C. §§ 1110, 1117, 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303, 3.317 (2017).

4. The criteria for entitlement to service connection for a stress disorder, to include as due to an undiagnosed or medically unexplained chronic multisymptom illness, have not been met. 38 U.S.C. §§ 1110, 1117, 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303, 3.317 (2017).

5. The criteria for entitlement to service connection for hypertension have not been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303, 3.307, 3.309 (2017).

6. The criteria for entitlement to service connection for GERD have not been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303 (2017).

7. The criteria for entitlement to service connection for obstructive sleep apnea, to include as due to an undiagnosed or medically unexplained chronic multisymptom illness, have not been met. 38 U.S.C. §§ 1110, 1117, 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303, 3.317 (2017).

8. The criteria for entitlement to service connection for memory problems, to include as due to an undiagnosed or medically unexplained chronic multisymptom illness, have not been met. 38 U.S.C. §§ 1110, 1117, 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303, 3.317 (2017).

9. The criteria for entitlement to service connection for a hay fever, claimed as chronic cough, have been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303 (2017).

10. The criteria for entitlement to service connection for dizziness, to include as due to an undiagnosed or medically unexplained chronic multisymptom illness, have not been met. 38 U.S.C. §§ 1110, 1117, 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303, 3.317 (2017).

11. The criteria for entitlement to service connection for DJD of the lumbosacral spine have not been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303, 3.307, 3.309 (2017).

12. The criteria for entitlement to service connection for plantar fasciitis have not been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303 (2017).

13. The criteria for entitlement to service connection for Gulf War Syndrome have not been met. 38 U.S.C. §§ 1110, 1117, 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303, 3.317 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Pursuant to the Veterans Claims Assistance Act (VCAA), VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C. §§ 5102, 5103, 5103A, 5107 (2012); 38 C.F.R. § 3.159 (2017).

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a link between the claimed in-service disease or injury and the present disability. 

Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).

In addition, for veterans who have served 90 days or more of active service after December 31, 1946, there is a presumption of service connection for certain chronic diseases if the disability is manifest to a compensable degree within one year of discharge from service. 38 U.S.C. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309.

For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "chronic." Continuity of symptomatology after discharge is required where the condition noted during service is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. 38 C.F.R. § 3.303(b); see Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (the theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic as per 38 C.F.R. § 3.309(a)).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits. VA shall consider all information and lay and medical evidence of record, and when there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).

The Veteran contends that he is entitled to service connection for bilateral knee strains; abdominal spasms; muscle pains; stress disorder; hypertension; GERD; obstructive sleep apnea; memory problems; hay fever; dizziness; degenerative joint disease of the lumbosacral spine; plantar fasciitis; and Gulf War Syndrome. For the following reasons, the Board finds service connection is warranted for hay fever but not for the remaining claims. (The Board will first address the Veteran's diagnosed hay fever, bilateral knee disability, GERD, hypertension, DJD of the lumbosacral spine, and plantar fasciitis. Thereafter, the Board will discuss the remaining claims, to include analysis of the applicable statutory and regulatory authorities regarding Gulf War-related undiagnosed or medically unexplained chronic multisymptom illnesses.)

Hay Fever (claimed as chronic cough)

The record reveals that the Veteran suffers from hay fever, which originated in service. In June 2015, the Veteran underwent a C&P examination in which the examiner confirmed the Veteran's hay fever originated in service, continued after service, and that the Veteran currently suffers from hay fever; the examiner concluded that the Veteran's service served as the etiology for his diagnosis of hay fever. Accordingly, the Veteran fulfills the criteria necessary for service connection, and service connection is granted. 




Bilateral Knee Disability

Concerning the Veteran's bilateral knee disability, the Veteran's service treatment records contain nothing concerning his knees; rather, the Veteran frequently stated that he was in excellent health, and confirmed his excellent health at his post-deployment physical. The Veteran first reported suffering from knee pain in 2006 to his primary care practitioner. Since then, the Veteran has suffered from knee pain and ameliorating treatments. The Veteran underwent a C&P examination in June 2015 in which the examiner diagnosed the Veteran with a right knee patellar rupture and a left knee strain and determined the Veteran's knee disabilities were not related to service. In reaching this conclusion, the examiner thoroughly reviewed the Veteran's file, his medical records, and spoke with the Veteran. As rationale for his conclusion, the examiner commented that the Veteran never reported knee pain in service, and did not complain of knee pain until 15 years after service.

The Veteran submitted several statements stating that he had suffered from knee problems since service, and his wife and former colleague from his deployment submitted statements attesting to that fact.

After carefully reviewing the record, the Board finds that the preponderance of the evidence is against the Veteran's claim for service connection. As noted above, the record is devoid of complaints or treatment related to the Veteran's knees until 2006, more than 15 years after the Veteran's discharge from service. The only positive evidence indicating that his symptomatology developed in service are lay statements to that effect. In this regard, the Board acknowledges that the Veteran is competent to relate symptoms within the realm of his personal knowledge, just as he is competent to relate what he has been told by an examiner. Layno v. Brown, 6 Vet. App. 465, 469-70 (1994); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). In this case, however, the Veteran's lay reports, and those from his wife and former colleague, regarding the onset of his symptoms have been inconsistent. As noted above, while he recently stated that his knee problems began in and have continued since service, the medical record demonstrates that he previously stated he was in excellent health leaving service and did not suffer from knee pain until 2006. See Caluza v. Brown, 7 Vet. App. 498 (1995) (in weighing credibility, VA may consider inconsistent statements and consistency with other evidence of record).

Under the facts of this case, the Board finds that the opinion rendered by the VA examiner outweighs the Veteran's lay contentions regarding the etiology of his knee disabilities. As illustrated above, the VA examiner's opinion addressed the Veteran's documented medical history and his lay contentions regarding the onset of his knee disabilities. It is well-established that, when evaluating medical evidence, the Board considers evidence to be more probative if it includes clear conclusions and supporting data with a reasoned analysis connecting the data and conclusions. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). Overall, the Board finds that the neutral, expert opinion of the VA examiner is more probative than the general lay statements provided by the Veteran and his friends and family in this case-particularly considering the inconsistent nature of those statements. In sum, the weight of the evidence establishes that the Veteran's bilateral knee disability did not develop in service.

GERD

Concerning the Veteran's claim for GERD, the Veteran's service treatment records contain nothing concerning esophageal symptoms or GERD; rather, the Veteran frequently stated that he was in excellent health, and confirmed his excellent health at his post-deployment physical. The Veteran first reported suffering from gastroesophageal pain in 2005 and was then diagnosed with gastritis and later with GERD in 2009. The Veteran underwent a C&P examination in June 2015 in which the examiner diagnosed the Veteran with GERD and determined it was not related to service. In reaching this conclusion, the examiner thoroughly reviewed the Veteran's file, his medical records, and spoke with the Veteran. As rationale for his conclusion, the examiner commented that the Veteran never reported gastroesophageal pain in service, and did not receive a diagnosis for it until 14 years after service.

After carefully reviewing the record, the Board finds that the preponderance of the evidence is against the Veteran's claim for service connection for GERD. As noted above, the record is devoid of complaints or treatment related to GERD until 2005, more than 14 years after the Veteran's discharge from service. The only positive evidence indicating that his symptomatology developed in service are lay statements to that effect. In this regard, the Board acknowledges that the Veteran is competent to relate symptoms within the realm of his personal knowledge, just as he is competent to relate what he has been told by an examiner. Layno, 6 Vet. App. at 469-70; Jandreau, 492 F.3d at 1377. However, the Veteran informed the examiner that his GERD symptoms did not develop until 2005, more than 14 years after service.

Under the facts of this case, however, the Board finds that the opinion rendered by the VA examiner outweighs the Veteran's lay contentions regarding the etiology of his GERD. As illustrated above, the VA examiner's opinion addressed the Veteran's documented medical history and his lay contentions regarding the onset of GERD. It is well-established that, when evaluating medical evidence, the Board considers evidence to be more probative if it includes clear conclusions and supporting data with a reasoned analysis connecting the data and conclusions. Nieves-Rodriguez, 22 Vet. App. at 304. Overall, the Board finds that the neutral, expert opinion of the VA examiner is more probative than the general lay statements provided by the Veteran. In sum, the weight of the evidence establishes that the Veteran's GERD is not related to his service.

Hypertension

Concerning the Veteran's claim for hypertension, the Veteran's service treatment records contain no indication of a diagnosis of hypertension; rather, the Veteran frequently stated that he was in excellent health, and confirmed his excellent health at his post-deployment physical. The Veteran first reported suffering from hypertension in 2006. The Veteran underwent a C&P examination in June 2015 in which the examiner diagnosed the Veteran with hypertension and determined it was not related to service. In reaching this conclusion, the examiner thoroughly reviewed the Veteran's file, his medical records, and spoke with the Veteran. As rationale for his conclusion, the examiner commented that the Veteran did not suffer from hypertension until 15 years after service.

After carefully reviewing the record, the Board finds that the preponderance of the evidence is against the Veteran's claim for service connection for hypertension. As noted above, the record is devoid of complaints or treatment related to hypertension until 2006, more than 15 years after the Veteran's discharge from service. The only positive evidence indicating that his symptomatology developed in service are lay statements to that effect. In this regard, the Board acknowledges that the Veteran is competent to relate symptoms within the realm of his personal knowledge, just as he is competent to relate what he has been told by an examiner. Layno, 6 Vet. App. at 469-70; Jandreau, 492 F.3d at 1377. However, the Veteran informed the examiner that his hypertension did not develop until 2006, more than 15 years after service.

Under the facts of this case, however, the Board finds that the opinion rendered by the VA examiner outweighs the Veteran's lay contentions regarding the etiology of his hypertension. As illustrated above, the VA examiner's opinion addressed the Veteran's documented medical history and his lay contentions regarding the onset of hypertension. It is well-established that, when evaluating medical evidence, the Board considers evidence to be more probative if it includes clear conclusions and supporting data with a reasoned analysis connecting the data and conclusions. Nieves-Rodriguez, 22 Vet. App. at 304. Overall, the Board finds that the neutral, expert opinion of the VA examiner is more probative than the general lay statements provided by the Veteran. In sum, the weight of the evidence establishes that the Veteran's hypertension did not develop in service, nor was it diagnosed within one year of his discharge from service.

DJD of the Lumbosacral Spine

Concerning the Veteran's claim for DJD of the lumbosacral spine, the Veteran contends that his DJD developed due to the wear and tear he suffered during service. Specifically, he suffered from back pain while building a fox hole and lifting sand bags in Saudi Arabia. The Veteran's service treatment records, however, contain nothing concerning back pain; rather, the Veteran frequently stated that he was in excellent health, and confirmed his excellent health at his post-deployment physical. The Veteran was first diagnosed with a mild case of DJD in 2009. The Veteran underwent a C&P examination in June 2015 in which the examiner confirmed the Veteran's diagnosis and determined it was not related to service. In reaching this conclusion, the examiner thoroughly reviewed the Veteran's file, his medical records, and spoke with the Veteran. As rationale for his conclusion, the examiner commented that the Veteran did not suffer from mild DJD until 18 years after service.

The Veteran submitted several statements stating that he had suffered from back problems since service, and his wife and former colleague from his deployment submitted statements attesting to that fact.

After carefully reviewing the record, the Board finds that the preponderance of the evidence is against the Veteran's claim for service connection. As noted above, the record is devoid of complaints or treatment related to the Veteran's back until 2009, more than 18 years after the Veteran's discharge from service. The only positive evidence indicating that his symptomatology developed in service are lay statements to that effect. In this regard, the Board acknowledges that the Veteran is competent to relate symptoms within the realm of his personal knowledge, just as he is competent to relate what he has been told by an examiner. Layno, 6 Vet. App. at 469-70; Jandreau, 492 F.3d at 1377. In this case, however, the Veteran's lay reports, and those from his wife and former colleague, regarding the onset of his symptoms have been inconsistent. As noted above, while he recently stated that his back problems began in and have continued since service, the medical record demonstrates that he previously stated he was in excellent health leaving service and did not suffer from back pain until 2009. See Caluza, 7 Vet. App. 498 (in weighing credibility, VA may consider inconsistent statements and consistency with other evidence of record).

Under the facts of this case, the Board finds that the opinion rendered by the VA examiner outweighs the Veteran's lay contentions regarding the etiology of his back disabilities. As illustrated above, the VA examiner's opinion addressed the Veteran's documented medical history and his lay contentions regarding the onset of his back disability. It is well-established that, when evaluating medical evidence, the Board considers evidence to be more probative if it includes clear conclusions and supporting data with a reasoned analysis connecting the data and conclusions. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). Overall, the Board finds that the neutral, expert opinion of the VA examiner is more probative than the general lay statements provided by the Veteran and his friends and family in this case-particularly considering the inconsistent nature of those statements. In sum, the weight of the evidence establishes that the Veteran's DJD did not develop in service, nor was it diagnosed within one year of his discharge from service.

Plantar Fasciitis

Concerning the Veteran's plantar fasciitis, the Veteran's service treatment records contain nothing concerning his feet; rather, the Veteran frequently stated that he was in excellent health, and confirmed his excellent health at his post-deployment physical. The Veteran first reported suffering from foot pain in 2003. Since then, the Veteran has suffered from plantar fasciitis and received treatment, treatment such as custom-made orthotics. X-rays obtained by the VA in 2009 did not demonstrate that the Veteran suffered from plantar fasciitis.

In 2010, the Veteran sought care from a private podiatrist after receiving a diagnosis of diabetes mellitus. In June 2013, the Veteran's podiatrist submitted a letter in which he stated the Veteran's plantar fasciitis could be related to service. The podiatrist explained that once plantar fasciitis causes pain, it remains symptomatic for a lifetime. The Veteran informed the examiner that his foot pain began during military training due to running and marching in service-issued boots which lacked arch support. The podiatrist speculated that such lack of arch support, coupled with physical training, could have been the initiating event in the Veteran's diagnosis.

The Veteran underwent a C&P examination in June 2015 in which the examiner confirmed the Veteran's plantar fasciitis and determined it was not related to service. In reaching this conclusion, the examiner thoroughly reviewed the Veteran's file, his medical records (including the letter from his private podiatrist), and spoke with the Veteran. As rationale for his conclusion, the examiner commented that the Veteran never reported foot pain in service, and did not complain of foot pain until 2003 but did not receive treatment until 2010, as part and parcel of a diabetes mellitus diagnosis. Furthermore, examination of the Veteran's feet at his service examinations did not reveal abnormalities. In sum, the examiner found the Veteran's self-reported excellent health throughout his entire time in service, as well as his documented normal foot structure, to be more indicative than the letter from the private podiatrist.

The Veteran submitted several statements stating that he had suffered from feet problems since service, and his wife and former colleague from his deployment submitted statements attesting to that fact.

After carefully reviewing the record, the Board finds that the preponderance of the evidence is against the Veteran's claim for service connection. As noted above, the record is devoid of complaints or treatment related to the Veteran's feet until 2003, and he did not receive treatment until after receiving a diabetes mellitus diagnosis. The positive evidence indicating that his symptomatology developed in service are lay statements and the statement from the podiatrist. In this regard, the Board acknowledges that the Veteran is competent to relate symptoms within the realm of his personal knowledge, just as he is competent to relate what he has been told by an examiner. Layno, 6 Vet. App. at 469-70; Jandreau, 492 F.3d at 1377. In this case, however, the Veteran's lay reports, and those from his wife and former colleague, regarding the onset of his symptoms have been inconsistent. As noted above, while he recently stated that his feet problems began in and have continued since service, the medical record demonstrates that he previously stated he was in excellent health leaving service and did not suffer from foot pain until 2003. See Caluza, 7 Vet. App. 498 (in weighing credibility, VA may consider inconsistent statements and consistency with other evidence of record).

As for the statement from the podiatrist, in reaching the conclusion that the Veteran's time in service could be a catalyst for his current diagnosis, the podiatrist's statement relied heavily on the Veteran's statement that he first suffered from foot pain in service. However, as noted above, this conclusion rests upon statements made to him by the Veteran which are inconsistent with the objective evidence of record. See LeShore v. Brown, 8 Vet. App. 406, 409 (1995). Moreover, the examiner's use of assumptions negates the legal adequacy of the opinion and renders it as mere speculation insufficient to substantiate a claim. See Tirpak v. Derwinski, 2 Vet. App. 609, 611 (1992) (explaining that medical evidence which merely indicates that an alleged disorder may be related to service is too speculative to establish the presence of any such relationship); Perman v. Brown, 5 Vet. App. 237, 241 (1993) (speculative or equivocal medical opinions may be considered "non-evidence" and have no probative value). In contrast, the VA examiner's opinion addressed the Veteran's documented medical history and his lay contentions regarding the onset of his back disability. It is well-established that, when evaluating medical evidence, the Board considers evidence to be more probative if it includes clear conclusions and supporting data with a reasoned analysis connecting the data and conclusions. Nieves-Rodriguez, 22 Vet. App. at 304. Moreover, the law is clear that it is the Board's duty to assess the credibility and probative value of evidence, and provided that it offers and adequate statement of reasons and bases, the Board may favor one medical opinion over another. See Owens v. Brown, 7 Vet. App. 429, 433 (1995). 

Under the facts of this case, the Board finds, for the reasons discussed above, that the opinion rendered by the VA examiner outweighs the Veteran's lay contentions and the statement from the Veteran's podiatrist regarding the etiology of his plantar fasciitis. In sum, the Board finds that the neutral, expert opinion of the VA examiner is more probative than the general lay statements provided by the Veteran and his friends and family and the statement from his treating podiatrist.

Thus, the Board finds that the most probative evidence demonstrates that the Veteran's plantar fasciitis did not develop in service and is not otherwise related to service. Consequently, the Veteran's claim for service connection must be denied.

Muscle Pains, Stress Disorder, Abdominal Pains, Sleep Apnea, 
Memory Problems, Dizziness, Gulf War Syndrome

The Veteran's service treatment records do not demonstrate that the Veteran received any treatment for his claimed muscle pains, stress disorder, abdominal pains, sleep apnea, memory problems, dizziness, or Gulf War syndrome while in service.

Post-service medical records reflect that the Veteran has not received any treatment for these disabilities. Indeed, there is no indication in the record that the Veteran received diagnoses for any of the claimed disabilities during the pendency of his appeal. The Board can find no indication of diagnoses or treatments, either in service or at any point during the pendency of the appeal, or proximate thereto. McClain v. Nicholson, 21 Vet. App. 319 (2007); Romanowsky v. Shinseki, 26 Vet. App. 289 (2013). 

The Veteran received C&P examinations for all claimed conditions in June 2015. The physician examined the Veteran and rendered negative diagnoses for the claimed muscle pains; stress disorder; abdominal pains; sleep apnea; memory problems; dizziness; or Gulf War Syndrome. Concerning the Veteran's abdominal pains, the Veteran's medical records demonstrate that he has never received a diagnosis of abdominal pain. Any abdominal pain inflicted upon the Veteran seems to stem from his GERD, which is discussed in the section above. Concerning the Veteran's muscle problems, the Veteran reported at his clinic visits that he did not suffer from muscle pains. Concerning his dizziness, his symptoms occurred when he stood up too quickly-the examiner determined this was simply a symptom of hypertension and not an actual diagnosis. 

The Board notes that there is additional applicable law regarding the Veteran's claimed Gulf War syndrome. For Persian Gulf War veterans, service connection for chronic, undiagnosed illnesses arising from service in Southwest Asia during the Persian Gulf may be established under 38 U.S.C. § 1117 and 38 C.F.R. § 3.317.

Under those provisions, service connection may be established for objective indications of a chronic disability resulting from an undiagnosed illness or illnesses, provided that such disability (1) became manifest in service on active duty in the Armed Forces in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent or more not later than December 31, 2016; and (2) by history, physical examination, and laboratory tests cannot be attributed to a known clinical diagnosis. To fulfill the requirement of chronicity, the illness must have persisted for six months. 38 U.S.C. § 1117; 38 C.F.R. § 3.317.

Signs and symptoms which may be manifestations of undiagnosed illness include, but are not limited to: fatigue, signs or symptoms involving skin, headache, muscle pain, joint pain, neurologic signs or symptoms, neuropsychological signs or symptoms, signs or symptoms involving the respiratory system (upper or lower), sleep disturbances, gastrointestinal signs or symptoms, cardiovascular signs or symptoms, abnormal weight loss, and menstrual disorders. 38 C.F.R. § 3.317(b).

The Veteran contends that his Gulf War Syndrome is manifested by his symptoms of chronic cough, abdominal spams, muscle pains, memory problems, stress, and dizziness. As noted above, the C&P examiner determined the Veteran's cough was related to his hay fever, and his abdominal pains were part and parcel of his GERD. The Veteran himself stated that he did not suffer from muscle pains, and he did not have any diagnoses related to memory loss. The examiner noted that the Veteran's reported stress was more likely related to his job as a CEO of a successful IT business. Accordingly, the Board finds that the most probative evidence of record demonstrates that the Veteran does not suffer from chronic undiagnosed symptoms and illnesses, as all of the Veteran's claimed symptoms have a medical explanation. See 38 U.S.C. § 1117; 38 C.F.R. § 3.317; see also Nieves-Rodriguez, 22 Vet. App. at 304 (holding that, when evaluating medical evidence, the Board considers evidence to be more probative if it includes clear conclusions and supporting data with a reasoned analysis connecting the data and conclusions).

In light of the above, the Board finds that the preponderance of the evidence is against the Veteran's claims, as there is no probative evidence demonstrating that the Veteran suffers from muscle pains; stress disorder; abdominal pains; sleep apnea; memory problems; dizziness; or Gulf War Syndrome. Congress has specifically limited entitlement to service-connected benefits to cases where there is a current disability. In the absence of proof of a present disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223 (1992).
 
In light of the absence of any probative evidence of current muscle pains; stress disorder; abdominal pains; sleep apnea; memory problems; dizziness; or Gulf War Syndrome at any point during the pendency of the Veteran's appeal, the claims must be denied. In reaching this decision, the Board has considered the benefit-of-the-doubt doctrine; however, as the preponderance of the evidence is against the claims, the doctrine is inapplicable. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Service connection for a bilateral knee disability is denied.

Service connection for abdominal spasms is denied.

Service connection for muscle pains is denied.

Service connection for a stress disorder is denied.

Service connection for hypertension is denied.

Service connection for GERD is denied.

Service connection for obstructive sleep apnea is denied.

Service connection for memory problems is denied.

Service connection for hay fever, claimed as chronic cough, is granted.

Service connection for dizziness is denied.

Service connection for DJD of the lumbosacral spine is denied.

Service connection for plantar fasciitis is denied.

Service connection for Gulf War Syndrome is denied.







____________________________________________
LESLEY A. REIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs